SHUMAN *v.* BEALL.*

PATENTS; INTERFERENCE; BURDEN OF PROOF; PRIORITY.

1. The junior applicant in interference proceedings has the burden of proving priority of invention beyond a reasonable doubt.

2. Where the junior party in interference proves that he was the first to conceive the invention, that he disclosed it to others, who fully understood it and could have reduced it to practice from his explanation, that he made accurate drawings, that this knowledge was imparted to the senior party's brother-in-law, who got possession of the drawings, and that his delay in applying for a patent was caused by the fraud

*See *Shuman* v. *Beall, post*, 329.—Reporter.

of the senior party, the latter's brother-in-law, and others, such junior party is entitled to priority.

No. 344. Patent Appeals. Submitted March 21, 1906. Decided April 3, 1906.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Howson & Howson* for the appellant.

*Mr. W. S. Duvall* and *Messrs. John B. Thomas & Co.* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

This is an interference declared between Richard J. Beall, Jr., on two applications for patents filed April 9, and April 21, 1904, respectively, and Frank Shuman, patentee, in two patents, No. 733,286, issued July 7, 1903, and No. 733,288, issued July 7, 1903.

The issue embraces twenty-six counts, and, without reciting them on account of their length, we adopt the brief description of the invention, and the synopsis of the several counts contained in the decision of the Examiner of Interferences, as follows:

"The inventions at issue relate to certain apparatus for forming concrete piles. In using the invention the pile is first driven in the ground and then withdrawn, thereby leaving an opening to be filled with plastic concrete, which, when it sets, forms the permanent pile.

"The counts of the issue may be grouped as follows:

"(1) The structure set forth in counts 1 and 10 to 16, inclusive, is a preparatory pile having an enlarged point.

"(2) The structure set forth in counts 2 and 3 is a preparatory pile having an opening extending through the point, where-

by air can enter the space below the point as the pile is withdrawn.

"(3) Counts 4 and 5 set forth the structure of counts 2 and 3 with the addition of a valve which closes the opening during the driving of the preparatory pile.

"(4) Count 6 relates to a combination of the structures set forth in groups 1 and 2.

"(5) Counts 7, 8, and 9 comprise a combination of the structures set forth in groups 1, 2, and 3.

"(6) Counts 17 and 18 relate to a preparatory pile having an enlarged point, said point being detachable so that it may be left in the ground when the preparatory pile is withdrawn.

"(7) The structure set forth in counts 19 to 26, inclusive, is a preparatory pile having a detachable concrete or other nonmetallic point."

Having to overcome patents issued to Shuman before his applications were filed, the burden is upon Beall, Jr., to show priority of invention beyond a reasonable doubt. This he has done to the satisfaction of each tribunal of the Patent Office, and their several decisions show a painstaking and accurate analysis of the evidence.

Believing that those decisions are right, and as the question of priority is one of fact solely, we shall content ourselves with a brief statement of the grounds of our concurrence. Shuman's claimed date of conception of the invention of the issue is October 8 to 10, 1902. Beall, Jr., claims to have conceived it and fully explained it to others about August 4, 1902.

On the latter date, Beall, Jr., who was a civil engineer and had been an architect and builder, was an employee of the Cranford Paving Company of Washington, District of Columbia, with which all of the leading witnesses were then or thereafter more or less connected. It was his business to estimate on work, superintend construction, and assist in the various contracts of the company. John Stewart was a clerk in the employ of said company, and his relations with the principal stockholders and officers of the same were intimate and confidential.

The patentee, Frank Shuman, was the brother-in-law of

Stewart, and lived in Philadelphia. He advertised himself as: "Consulting Engineer and Chemist. Designing and Improving of Chemical and Mechanical Processes and Plants a Specialty." He admitted in his testimony that prior to October 8, 1902, he had no practical knowledge of the construction and uses of concrete piling. He testifies that on a visit to his mother, who lived in Washington, on the night of October 8, 1902, Stewart mentioned the matter of concrete piling needed in certain foundations for buildings to be erected at the Washington barracks. He at once exclaimed that the thing was easy, and within two or three days completed drawings showing the invention and made certain experiments with short pieces of pipe, in the yard of his mother's residence, which confirmed the practical utility of his discovery.

Beall, Jr., testified that on passing by the place in Washington where the foundations of "Stoneleigh court" were being constructed, on August 4, 1902, he saw the contractor at work, and examined his mode of operation. The Cranford company had made estimates on the same job. The contractor undertook to drive a wooden pile, then to extract the same and fill the opening with concrete. There was great difficulty in extracting the pile on account both of friction and atmospheric pressure. One of the two piles driven by the contractor could not be extracted at all. Beall, Jr., then conceived the idea of boring a hole in the pile, putting in a removable plug at its end, and removing the same when the necessary depth had been obtained, so as to let in the air and relieve against the air pressure. He explained his idea to Parsons, an experienced contractor in such work, and to Brenizer, who was a practical pile driver at the head of a pile construction company closely connected with and under the control of the Cranford company. Brenizer's office was in the same building with and adjoining that of the Cranford company where Beall and Stewart were employed. Within a day or two, after returning with Brenizer from a visit to the Stoneleigh court work, Beall, Jr., made sketches illustrating the various devices of the issue, and then, with instruments, made a large drawing of the same, which was ex-

amined by and explained to Brenizer and Willard H. Davis, who was a clerk for Brenizer's company.

Both Brenizer and Davis fully corroborate this statement. They, particularly Brenizer, were competent persons to pass judgment upon the invention, and, if they have any interest in the matter at all it is on the side of Shuman, who subsequently gave Brenizer some stock in the corporation founded by him to exploit the patents. Both also corroborated the statement of Beall, Jr., that Stewart came to them, examined the drawing, had it explained to him, and expressed his satisfaction; and further, that Stewart advised against testing the invention at the time, and suggested that he would get his brother-in-law, Shuman, who made a business of developing patents, to take hold and work the thing out. Beall, Jr., at first objecting, finally agreed to let this be done. The drawing passed into the possession of Stewart, and has not since been produced. While Stewart strenuously denied the whole statement, the testimony of the others is plain, direct, and overwhelming. It may be added, also, that Parsons, a wholly disinterested, intelligent, and competent witness, testified to Beall, Jr.'s, general disclosure of his invention about the time that it was made. Another witness, Merriam, who, however, was not an expert, testified to Beall, Jr.'s, disclosure of his general scheme in August, 1902. From all of this testimony we can come to no other conclusion than that Beall, Jr., conceived the invention in August, 1902, disclosed it to others, who fully understood it and could have reduced it to practice from his explanations, made accurate drawings of the same, and that this knowledge was imparted to Stewart, who got possession of the drawings. This is the crucial point of the case.

Without discussing the evidence relating to other questions of fact, we think it sufficient to say that Shuman is not entitled to be considered an independent inventor. He undoubtedly had knowledge of Beall, Jr.'s, invention through Stewart. The subsequent reduction to practice by the Cranford Paving Company, though done under the supervision of Stewart and Shuman, inured to Beall, Jr.'s, benefit, who believed that the same was being done in his interest. Beall, Jr.'s, long inaction, and other

conduct which tends to bear against the justice of his claim to the invention, are satisfactorily explained by his relations with the Cranford company during the whole period. He intended to let that company have a large share of the benefits of his invention, and was content to ask but a moderate share for himself, until the time that he learned of the appropriation of the same by Shuman, Stewart, and certain principal officers of the Cranford company, who proposed to leave him entirely out. We are of the opinion that Beall, Jr., was the original and sole inventor of the subject-matter of the issue, and that an attempt has been made to make him the victim of a bold and shrewdly devised scheme to deprive him of his right thereto.

The decision in his favor was right, and will therefore be affirmed. It is so ordered, and that this decision and the proceedings in this court be certified to the Commissioner of Patents, as required by law. *Affirmed.*

A petition for a rehearing was denied May 3, 1906.

Mr. Justice STAFFORD, of the supreme court of the District of Columbia, sat with the court in the hearing of this appeal in the place of Mr. Justice McCOMAS, and concurred in the decision.